157 So.2d 422 (1963)
DANA T. ARMSTRONG AND KENNETH MAY, APPELLANTS,
v.
CITY OF EDGEWATER, A MUNICIPAL CORPORATION, AND DAVID L. WIGGINS, JR., ETC., APPELLEES.
No. 32942.
Supreme Court of Florida.
November 8, 1963.
*423 Robert H. Matthews and Fred R. Brannon, Jr., New Smyrma Beach, for appellants.
Louis Ossinsky, Sr., of Ossinsky & Krol, Daytona Beach, for City of Edgewater. Joseph Hirschman, Daytona Beach, for David L. Wiggins, Jr.
THORNAL, Justice.
We have for review by direct appeal a decree of the circuit court holding Chapter 63-1310, Laws of Florida, 1963, to be unconstitutional.
We must determine whether the subject statute is invalid because of vagueness, ambiguities and the lack of a sufficient title.
The appellee Wiggins filed a complaint for a declaratory decree construing Chapter 63-1310, supra. He contended that it was invalid. The appellee City of Edgewater was the defendant. The appellants Armstrong and May were permitted to intervene in the trial court. For reasons which we shall subsequently epitomize, the chancellor found the statute to be unconstitutional. The intervenors have appealed. In this Court the City joins Wiggins, the successful plaintiff below, in resisting the appellants' assault on the final decree.
The appellants contend that, although inartfully drafted, the assaulted statute adequately reflects a clear legislative intent and that under recognized rules of statutory construction certain words which were obviously omitted inadvertently may be inserted to effectuate the intent of the Legislature.
The appellees rely upon the view of the chancellor to the effect that the statute is fatally defective because of an insufficient title and because its language is so vague and confusing that it is totally unenforceable.
Chapter 27532, Laws of Florida, 1951, is the basic legislative charter of the City of Edgewater. Under this charter the governing body consisted of five city councilmen who elected a mayor from among their own number. The councilmen were nominated by petition and elected by a plurality in a general city election. Section 138 of the 1951 act reads in part as follows:
"Section 138. NOMINATION OF CANDIDATES  PETITIONS FOR PLACE ON BALLOT. Candidates for the office of City Councilman shall be nominated only by petition. The name of any qualified elector of the City shall be printed upon the ballot to be used at each regular municipal election as a candidate for the office of City Councilman, if there is filed with the City Clerk a petition in accordance with the following provisions, to-wit: * * *." (Emphasis added.)
*424 By Chapter 29049, Laws of Florida, 1953, certain sections of the 1951 charter act were amended. One amendment provided for four city councilmen to be elected from voting districts and a mayor to be elected by popular vote from the city at large. The 1953 act continued the procedure for nominating the city officials by petition and electing them by a plurality in the general election. Section 138, as amended by the 1953 act, reads in part as follows:
"Section 138. NOMINATION OF CANDIDATES  PETITIONS FOR PLACE ON BALLOT. Candidates for the office of City Councilman or Mayor shall be nominated only by petition. The name of any qualified elector of the City shall be printed upon the ballot to be used at each regular municipal election as a candidate for the office of City Councilman or Mayor, if there is filed with the City Clerk a petition in accordance with the following provisions, to-wit: * * *." (Emphasis added.)
Chapter 63-1310, Laws of Florida, 1963, purports to be a further amendment of the provisions of the 1951 act as amended by the 1953 act. The title to Chapter 63-1310, supra, reads in part as follows:
"AN ACT AMENDING SECTIONS 8, 131, 135, 138, 138(e), and 139 of CHAPTER 27532, LAWS OF FLORIDA, ACTS OF 1951, AS AMENDED BY CHAPTER 29049, LAWS OF FLORIDA, ACTS OF 1953, BEING THE CHARTER OF THE CITY OF EDGEWATER, IN VOLUSIA COUNTY, FLORIDA, BY AMENDING SECTION 8, SO AS TO PROVIDE FOR A PRIMARY ELECTION TWO (2) WEEKS PRIOR TO THE GENERAL CITY ELECTION WHEN MORE THAN TWO (2) CANDIDATES QUALIFY FOR THE OFFICE OF COUNCILMAN OR MAYOR, * * *" (Emphasis added.)
Chapter 63-1310, supra, added Section 8(a) which reads as follows:
"Section 8(a). Lands lying east of Riverside Drive shall be included in the abutting voting zones west of Riverside Drive. In the event more than two (2) candidates qualify for the office of councilman or mayor, a primary election shall be held two (2) weeks prior to the general city election and the two (2) candidates receiving the greatest number of votes in the city primary election shall have their names printed on the ballot as candidates in the general city election." (Emphasis added.)
It is perfectly clear from even a casual reading of Chapter 63-1310, supra, that the principal change in the election machinery of the City sought to be accomplished was the nomination of the mayor and councilmen in a primary and election in the general election when more than two candidates sought these several offices. However, the amendment of Section 138 of the charter provision as contained in Chapter 63-1310, supra, reads in part as follows:
"Section 138. NOMINATION OF CANDIDATES  PETITIONS FOR PLACE ON BALLOT. Candidates for the office of city councilman shall be nominated only by petition. The name of any qualified elector of the city shall be printed upon the ballot to be used at each regular or primary municipal election as a candidate for the office of city councilman, if there is filed with the city clerk a petition in accordance with the following provisions, to-wit:
(a) Such petition shall state the name of each person whose name is presented for a place upon the ballot and that he is a candidate for the office of city councilman." (Emphasis added.)
*425 It should be noted that in providing for nomination by petition, the 1963 amendment of Section 138, supra, makes reference to "candidates for the office of city councilman * * *" and omits the words "or mayor" which appear in this section as it was amended by the 1953 act quoted above. The effect of this omission, if permitted to stand, would be to create a hiatus in the procedure for nominating a mayor. The City charter provides for the office of mayor. Section 14, Chapter 29049, Laws of 1953. The title to the 1963 statute announces that the act contains provisions for the nomination of both mayor and councilmen by primary. Section 8(a) of the 1963 act provides for the nomination of a mayor and the city councilmen in a primary where more than two seek the office. Nevertheless, in amended Section 138 of the 1963 statute the words "or mayor" were omitted from the provision which requires a petition to be filed for the purpose of placing the name of a candidate on a primary or general election ballot.
It is obvious from a comparison of Section 138, in the 1963 statute with the section as it appeared in former acts, the draftsman of the 1963 act based the new statute on the section as it read in the 1951 statute, which did not provide for an elected mayor, instead of on the 1953 statute which did so provide. An examination of Section 138, as we have quoted it from the three statutes in the forepart of this opinion, will clearly establish the accuracy of this observation.
In examining acts of the Legislature our judicial obligation is to sustain them if it is possible to do so. When we are called upon to construe a legislative enactment our primary objection should be to ascertain the legislative intent. If the intent is clear from the content of the statute, our function is to interpret the act so as to effectuate that intent if we can do so by the application of accepted rules of statutory construction.
Courts are, of course, extremely reluctant to add words to a statute as enacted by the Legislature. They should be extremely cautious in doing so. The recognized rule, however, is that when a word has obviously been omitted and the context of the act otherwise reflects the clear and unequivocal legislative intent, then this intent may be effectuated by supplying the word or words which have been inadvertently omitted. The courts cannot and should not undertake to supply words purposely omitted. When there is doubt as to the legislative intent or where speculation is necessary, then the doubts should be resolved against the power of the courts to supply missing words. On the other hand, when the addition of a word is necessary to prevent an act from being absurd and in order to conform the statute to the obvious intent of the Legislature, then words which were clearly omitted through some clerical or scrivener's misprision may be added by the court. Southerland, Statutory Construction, Vol. 2 (3rd edition) Section 4924; Crawford, Statutory Construction, Section 200; 50 Am.Jur. "Statutes", Section 254, p. 250.
We ourselves have heretofore applied this rule of statutory construction. Haworth v. Chapman, 113 Fla. 591, 152 So. 663. Our Haworth opinion itself demonstrates that this Court will supply the omitted words in a situation where the legislative intent is clear but will refuse to supply them where uncertainty as to the legislative intent prevails. In Atlantic Coast Line Co. v. Boyd, Fla., 102 So.2d 709, we refused to supply a word where the legislative intent was unclear and the addition of our own words would merely have amounted to our view of what the statute should have contained. For the application of the same rules in regard to punctuation, see Baker v. Morrison, Fla., 86 So.2d 805, and, Wagner, et al. v. Botts, Fla., 88 So.2d 611.
In the instant case there can be no doubt of the intent of the Legislature in enacting Chapter 63-1310, Laws of 1963. *426 It was simply to provide a primary system for nominating the city councilmen and mayor of the City of Edgewater when more than two candidates applied for an office. The title clearly announced the legislative intent. The body of the act itself further demonstrated the same intent. The clerical omission in Section 138, as amended, was palpably the result of the inadvertence of the draftsman. We apply the rule of Haworth v. Chapman, supra, in holding that we can judicially effectuate the legislative intent by simply supplying the words "or mayor" following the words "city councilman" as they appear in amended Section 138, Chapter 63-1310, supra.
The chancellor had the further view that the 1963 act was fatally defective because it contained a specific provision for the opening and closing of the municipal registration books. Section 131, Chapter 63-1310, supra. It was his view that this provision had the effect of nullifying the City's participation in the county permanent registration system under Chapter 98, Florida Statutes, F.S.A. Inasmuch as such a result was not announced in the title, the chancellor concluded that the statute must fall. We do not construe the registration book provisions of Chapter 63-1310, supra, as nullification of the City's participation in the county registration system. The identical provision appeared in the 1951 Charter Act except to the extent that it was expanded to include primaries by the 1963 act. Under Section 98.091, Florida Statutes, F.S.A., a municipality with a population in excess of 1,500 is permitted to use the county's permanent registration system. This permission is extended to a municipality "regardless of the provisions of its charter or other laws relating to electors * * *." Section 98.091, Florida Statutes, F.S.A. The general act is cumulative to the specific powers granted by the municipal charter. Where a municipal power is granted by a general act which affirmatively announces by its own terms that it is cumulative or is not subject to restrictions in a municipal charter, the municipality has the option to abide by the provision of its charter or alternatively, to claim the benefits of the cumulative general act. Riviere v. Orlando Parking Commission, Fla., 74 So.2d 694. Pursuant to this rule the restrictions regarding the opening and closing of registration books contained in Section 131, Chapter 63-1310, supra, would not impinge upon the City's right to adopt the county permanent registration system. Hence, the act was not defective. The subject provision was clearly signaled by the title and it was no broader than the title. Consequently, the act would not fail because of any defect in the title.
Reluctant, as we customarily are, to disagree with the conclusions of a long-experienced chancellor, we are constrained to do so in this instance. The final decree is reversed and the cause is remanded for the entry of a decree consistent with this opinion.
It is so ordered.
TERRELL, Acting Chief Justice, and ROBERTS and O'CONNELL, JJ., concur.
THOMAS, CALDWELL and HOBSON (Ret.), JJ., dissent.