HENRY C. PITNEY, JOHN R. EMERY, ALFRED REED,
FREDERIC W. STEVENS AND MARTIN P.
GREY, VICE-CHANCELLORS.

THE MAYOR, &c., OF WOODRIDGE and THE MAYOR, &c., OF
WALLINGTON, both in the county of Bergen,

*v.*

THE MAYOR, &c., OF CARLSTADT, THE INHABITANTS OF THE
TOWNSHIP OF BERGEN and GEORGE ZIMMERMAN, all in
in the county of Bergen.

[Decided May 25th, 1900. Filed February 11th, 1901.]

1. Where specific performance was sought of a contract agreeing on a
division to be made of assets held by a township, between such township
and boroughs set off therefrom, as required by *P. L. of 1896 ch. 183*, an

(1)

allegation in the bill of a conveyance by the township, for nominal consideration, of valuable property forming part of such assets, in fraud of the boroughs, and to hinder and delay the settlement, was not an allegation of a revocation by the township of the contract.

2. A contract agreeing on a division of the assets and liabilities of a township, under *P. L. of 1896 ch. 183*, requiring apportionment and division of assets between the township and boroughs set off therefrom, and making the action of a majority of the municipalities binding on the others, is a complete contract and is not revocable by the township.

3. A contract intended as the basis of a settlement between a township and boroughs set off therefrom of the liabilities and assets of the township, under *P. L. of 1896 ch. 183*, agreeing on a retention by the township of a certain percentage of the funds, and an equal division of the balance between the boroughs, and a conveyance to each borough of the real property lying therein, is sufficiently clear and definite as a basis of settlement to be specifically enforced against such township.

4. Where a bill sought specific performance of a contract executed as a basis of division of assets between a township and boroughs set off therefrom, as required by *P. L. of 1896 ch. 183*, and to set aside as fraudulent a conveyance for nominal consideration of a portion of such assets, made to one of the defendants having notice of the contract, to hinder and delay its enforcement, such bill is not demurrable because of multifariousness and misjoinder of parties or causes of action, since its object is to carry out the contract, and the fraudulent conveyance must be disposed of to accomplish that result.

5. Where the parties to a contract have become incapable of carrying it out without judicial aid, by reason of an alleged fraudulent conveyance to another person, with notice of the contract, of a portion of the property contracted for, equity will take jurisdiction to enforce their rights.

On the several demurrers of the defendants.

The object of the bill is to enforce, by specific performance, a contract entered into by the four municipalities, complainants and defendants, and, among other things, for the conveyance of certain lands, and, incidentally, to have set aside a conveyance by the township of Bergen to the defendant Zimmerman for a portion of those lands.

The facts set up in the bill and admitted by the demurrers are as follows:

The territory of each of the three boroughs was originally a part of the territory of the township of Bergen in the county of Bergen. The borough of Carlstadt was organized on the 28th of June, 1894; the borough of Woodridge was organized on December 5th, 1894, and the borough of Wallington was organ-

ized on December 31st, 1894. No arrangement was made between the municipalities for a division of the assets and liabilities of the mother township until after the passage of the act of April 16th, 1896 (*P. L. of 1896 p. 270*), entitled "An act to provide for the division of the assets and liabilities of townships between such townships and any borough or boroughs set off from the same."

After the passage of that act the three boroughs united in a movement against the township to compel such partition, and simultaneously adopted a resolution, of which the following, *mutatis mutandis*, is a copy:

"Be it resolved by the mayor and council of the borough of Carlstadt, that Messrs. Demarest and De Baun be engaged as counsel to proceed against the township of Bergen, for a division of assets and liabilities, under act of 1896, chapter 183, and that in conjunction with the borough of Wood Ridge and Wallington, the expenses of suit are to be paid share and share alike, until all three boroughs have received their share due them, or the suits settled."

At the time of the incorporation of the boroughs there was in the possession of the officials of the township of Bergen assets amounting to $2,500 in cash, or its equivalent, besides real estate in various parts of the township, which had been sold for taxes and bought in by the township.

On the application of the borough of Carlstadt, in pursuance of this resolution, a rule to show cause was granted by the supreme court in February, 1897, why a writ of *mandamus* should not issue to compel the township committee of Bergen township, then composed of William Bade, William Fleischman and William Foose, to make an apportionment and division of the assets of the township between said borough and the township. That rule was argued at the February Term, 1897, of the supreme court, and at the June Term, 1897, an order was made for the issue of a peremptory *mandamus,* as reported in *Carlstadt v. Bergen, 31 Vr. 360.*

Pending that litigation, and on the 5th of April, 1897, the borough of Carlstadt, by proper proceedings, took some additional territory from the township of Bergen, and after the

decision of the supreme court in June, 1897, proceeded at once to make a division between them—Bergen and Carlstadt—of the assets of the township, without taking into consideration the rights of Woodridge or Wallington, and Bergen paid Carlstadt $150 in performance of that agreement of partition.

Later on, each of the municipalities, by resolutions adopted by each, appointed, authorized and empowered a committee from each of said municipalities to meet and agree upon a fair and equitable settlement of the matters between them. In pursuance of those resolutions a meeting was held July 27th, 1897, at the school-house in Woodridge, and at that meeting each of the committees so appointed from each municipality (that of the township of Bergen consisting of its three township committeemen), by unanimous vote, adopted the following contract, which is signed by each of the committees:

"At a joint meeting held by the township committee of Bergen, and the duly authorized committees of the boroughs of Carlstadt, Wallington and Woodridge, it was mutually agreed to make a division of the liabilities and assets of the township of Bergen as same existed on the fifth day of April, 1897 (the division of assets made between Carlstadt and township of Bergen under annexation to be invalid and canceled), in the following manner: Bergen township to retain seventeen per cent. of the funds then on hand and same percentage of funds yet collectable from tax duplicate of 1896, and other sources; the balance to be paid to Carlstadt, Wallington and Woodridge boroughs, share and share alike (each one-third). The property held by the township of Bergen in the boroughs of Carlstadt, Wallington and Woodridge shall be quit-claimed by the town committee to the boroughs in which located respectively. What is located in Bergen township to be retained by the township.

"The amounts due for back taxes on properties in each borough to be taken from tax property book, the three amounts added together to form basis of division of said property between the three boroughs, one-third of the total amount to be the share each borough is entitled to.

"If either borough has more property tax claim within its borough than it is entitled to, then twenty-five per cent. of the amount of surplus shall be paid over in cash to the borough receiving less than its share as settlement of such difference.

"This agreement to be duly accepted by the township committee of Bergen and the mayor and council of the three boroughs, a committee of three from each borough to meet with the township committee on the 24th day of August, 1897, and make the division as herein agreed upon, and the money still uncollected by the township collector to either be divided as per this agreement, when money is received by him, or the township authorities to give each borough a due-bill for its share, payable in six

Woodridge *v.* Carlstadt.

months·from date of final division; Each borough to pay for the execution of quit-claim deeds.

"Dated Carlstadt, New Jersey, July 27th, 1897.

"Signea by the following committees:

"ALFRED HARRY,
"WILLIAM FLEISCHMAN,
"WILLIAM BADE,
*"Township Committee of Bergen Township.*
"HENRY MAYER,
"JOHN H. RASMUS,
"AUGUST R. KLAUSS,
*"Carlstadt Borough.*
"F. KOHBERTS,
"H. E. BRINKERHOFF,
"FRANZ FRITSCH, ·
*"Woodridge Borough.*
"THOMAS R. CALLINS,
"BERNHARD KOSTER,
"EDWARD VANDERWHIT,
*"Wallington Borough."*

This agreement was ratified and confirmed by each of the municipalities, the inhabitants of the township of Bergen acting through its township committee.

At the time of the making of this agreement a large part. of the assets of the township consisted of real estate held by the township by virtue of tax sales made for unpaid taxes, and a large portion of that real estate was situate within the territorial limits of the borough of Woodridge.

On the 3d of August, a week after the making of this agreement, three persons, purporting to be the township committee of the township of Bergen, to wit, the same three persons who were its committee on the previous 27th of July and who executed the agreement on behalf of the township, made a conveyance to the defendant Zimmerman, then the mayor of Carlstadt, of a large part of the real estate so held by the township by virtue of sales for unpaid taxes.

No consideration, or, if any, only a nominal and quite insufficient one, was paid by Zimmerman for this land. That expressed in the deed is $75. Two of the committeemen who signed the deed had resigned before executing it, and others had been appointed in their place.

Zimmerman was in nowise interested in the land as owner or otherwise.

No resolution of the township committee was made authorizing the conveyance, and the deed was not attested by the township clerk.

The allegation of the bill is that the deed was made to Zimmerman and procured by him for the purpose of defeating the rights of Woodridge and Wallington under the agreement of July 27th.

There was due for unpaid taxes and for taxes which had accrued after the sale to the township, upon the land so conveyed, $800, a sum much greater than that paid by Zimmerman for it. The allegation of the bill is that the making of the deed was a violation of the agreement of July 27th, and a fraud against the complainants herein, and that it hinders and delays the settlement agreed upon.

The bill alleges an application by complainants to Zimmerman and the township of Bergen to carry out the agreement according to its spirit and terms, and that the Zimmerman title should be released and the lands conveyed to him be treated as if still belonging to the township of Bergen; that Zimmerman declined to release to the township, and Carlstadt and Bergen pretended to be ready and willing to carry out the agreement, but that their readiness and willingness is a mere pretence on their part. And while it is not distinctly alleged in the bill that their proposition is to divide the assets as if the conveyance to Zimmerman was made in good faith and the township of Bergen only be charged with what they actually received from Zimmerman, yet such is the fair inference from the language used. In other words, the inference from the allegations of the bill is that the township of Bergen and the borough of Carlstadt contrived to have the lands in question conveyed to Zimmerman, who was mayor of Carlstadt, at a nominal consideration, with the view of gaining an advantage over the complainants in the carrying out of the agreement.

There is no direct allegation in the bill that the lands conveyed to Zimmerman were owned by the township of Bergen on April 5th, 1897, but there is a clear and distinct allegation that most of those lands were within the territorial limits of Woodridge, and "would have been set off to Woodridge if the

terms of the agreement of July 27th were carried out." This is tantamount to an allegation that the lands were the property of the township of Bergen on April 5th, 1897.

*Mr. Luther Shafer,* for the township of Bergen and the borough of Carlstadt.

*Mr. Edward J. Luce,* for George Zimmerman.

*Mr. Milton Demarest,* for the complainants.

PITNEY, V. C.

The principal reliance of defendants in support of the demurrers at the argument was that, under the construction put upon the act of April 16th, 1896, by the supreme court, in the case of *Orvil* v. *Woodcliff, 32 Vr. 107,* the contract of July 27th, 1897, was not binding on the township of Bergen without a vote of the people in its confirmation. But this ruling was, after the argument herein, reversed by the court of errors and appeals, as reported in *35 Vr. 292,* and it was held that the vote of the township was not necessary, and that the action of the township committee bound the township.

It remains to consider other objections.

The objection next in importance is that the contract is incomplete, being a mere memorandum looking to a future and complete agreement, and is revocable, and appears by the bill to have been revoked by the township of Bergen; and further, that it is uncertain, vague and indefinite in its meaning.

In considering these objections it must be borne in mind that the duty of the defendants to unite with the complainants and agree, or attempt to agree, on a division, is thoroughly established, not only by the decision of the supreme court in *Carlstadt* v. *Bergen,* but by that of the court of appeals in the case of *Orvil* v. *Woodcliff,* just referred to; and it may be fairly inferred and assumed that the meeting of the representatives of the four municipalities on July 27th, 1897, was held in pursuance of the mandate of the supreme court. I fail to find anything in the bill which shows a direct revocation, or attempt

to revoke, by the authorities of the township of Bergen, and, as the second section of the act of April 16th, 1896, makes the action of a majority of the municipalities binding on the others, I doubt the power of one of the four to revoke the contract after it has once been entered into. Further, in the absence of fraud, accident or mistake, I doubt the power of a majority to revoke.

As to its indefiniteness: I think it sufficiently clear and definite as a basis of a settlement. And that was all it was intended to be. Besides, the allegations of the bill show that·the defendants did not object to carrying it out on that or any other ground, but were apparently, or pretended to be, ready to proceed. ·The real difficulty in the way of a settlement, such as the complainants' ought to be satisfied with, was that the defendants had made a conveyance of the property, which was subject to the agreement, at an inadequate price, and. apparently intended to insist in carrying out the settlement on the basis that ·they were to account for those· properties at the price which they had received for·them. Or, to state it differently, they had attempted to render themselves incapable of performing the agreement by aliening a part of its subject-matter; and the object of the bill is not so much to enforce·the carrying out of the agreement as to annul the action just named. It is substantially the same as a bill by vendee against vendor for the specific performance of a contract to convey land, and with it, added, a statement that after the contract was made the vendor had conveyed it to a third party, with notice of the contract, for a nominal consideration, for the purpose of defeating, in whole or in part, the enforcement of the contract.

And this consideration disposes of the only other serious objection raised, and that is, that the bill is multifarious, and that there is a misjoinder of causes of action; that the defendant Zimmerman is not interested in the other question. ·

This objection, clearly, is without merit. The object of the suit is to carry out·the contract of July 27th, 1897, which was made in obedience to·a mandate of the court and in fulfillment of a clear legal duty resting upon the defendants; and in order to accomplish that result it is necessary to dispose of the fraudu-

lent conveyance from the township to Zimmerman, who was at the time mayor of Carlstadt, the other defendant, and is chargeable with notice of the contract to convey the very property, or the greater part of it, entered into several days before the conveyance to him. It is not necessary to cite authorities to show that such a suit is not open to. the .charge of being vicious by reason of either multifariousness or misjoinder of causes of action or parties.

This is clearly a case for proceeding in this court. It is manifest that the aid of an expert accountant is necessary to state the accounts between the parties, and no action at law can avail to apportion these assets on the basis of the agreement of July 27th, 1897. The contract, if it cannot be carried out between the parties without judicial aid, must, of necessity, come into a court of equity, where all the persons interested have been made parties, and the rights of each enforced.

The demurrers should be overruled, with costs, with leave to the defendants to answer on the usual terms.