MADELINE LANDIS SCHULZ, PROSECUTRIX, v. STATE BOARD OF EDUCATION AND BOARD OF EDUCATION OF THE CITY OF NEWARK, RESPONDENTS.

Argued October 5, 1943—Decided April 11, 1944.

Before Justices PARKER, HEHER and PERSKIE.

For the prosecutrix, *Harkavy & Lieb* (*Abraham I. Harkavy*, of counsel).

For the respondents, *Jacob Fox*.

The opinion of the court was delivered by

PERSKIE, J. The fundamental question for decision on the facts of this case is whether the services which prosecutrix rendered as a substitute teacher of art in the public schools of the City of Newark, entitled her to tenure on November 8th, 1940, within the meaning of *R. S.* 18:13–16, as amended by *Pamph. L.* 1940, *ch.* 43, *p.* 125, § 1, which reads as follows:

"The services of *all* teachers  *  *  *, [italics ours] excepting those who are not the holders of proper teachers' certificate in full force and effect, shall be during good behavior and efficiency,  *  *  *  (c) after employment, within a period of any four consecutive academic years, for the equivalent of more than three academic years, some part of which must be served in an academic year after July first, one thousand nine hundred and forty; provided that the time any teacher,  *  *  *  had taught in the district in which he was employed at the end of the academic year immediately

preceding July first, one thousand nine hundred and forty, shall be counted in determining such period or periods of employment in that district. * * *"

The facts which give rise to the stated question are stipulated. From these facts and from the record submitted, we learn that prosecutrix holds an effective state permanent special art certificate, for elementary and high schools, dated January 2d, 1935. *R. S.* 18:13–1, 18:13–2.

We pass over the periods of service which prosecutrix had rendered as a substitute teacher for the Board of Education of the City of Newark (hereafter referred to as School Board), prior to the school year of 1937-1938. Prosecutrix' teaching service was continuous throughout the school year of 1937-1938 during which time she taught in various schools in Newark at a salary of $120 a month, because of the temporary leave of absence granted to the regular art teacher, a Miss Howe. For the school years 1938-1939 and 1939-1940, prosecutrix' services continued uninterruptedly as a teacher of art at Arts High School, Newark, at the salary of $160 a month and such services did not result from the temporary absence of another teacher. Upon the completion of her three years of teaching service, as aforesaid, there was an hiatus in prosecutrix' employment from the end of the academic year, in June, 1940, until November, 1940. Her teaching service during the fourth consecutive academic year, 1940-1941, consisted of the following substituted teaching assignments: one day on November 8th, 1940, as an elementary teacher, one and one-half days during December of 1940 and two days during January of 1941.

We also learn that counsel for the respective parties expressly stipulated that prosecutrix "is entitled to tenure if the time served by her during the academic year 1937-1938, plus at least one day of the four and one-half days during which she was employed in the academic year 1940-1941, can be added to the period of her services during the academic years 1938-1939 and 1939-1940, in computing the period constituting 'equivalent of more than three academic years' under subdivision (c) of Section 18:13–16 of the Revised Statutes; and that otherwise she does not have tenure status."

On the issue so stipulated and submitted, the Commissioner of Education, on December 29th, 1941, answered the posed question requiring decision in the affirmative. He concluded that "this day of service [November 8th, 1940] added to the three previous complete years of employment in four consecutive years, meets the requirements of subsection (c), chapter 43, *Pamph. L.* 1940, and accordingly the benefits thereunder must accrue." Pursuant to that conclusion, he ordered the School Board to reinstate prosecutrix in a teaching position of art in the Newark public schools in accordance with its rules and regulations; that prosecutrix be paid her back salary with interest from November 8th, 1940 (less credit for any sum paid to her, without prejudice, and pursuant to stipulation, for services rendered by her after such date); and that prosecutrix' seniority rights be preserved. *R. S.* 18:13–19.

Subsequent to his aforestated disposition of prosecutrix' appeal and pursuant to further stipulation between counsel for the respective parties, the Commissioner of Education further concluded, *inter alia,* on July 2d, 1942, that prosecutrix' tenure status applied to "day school service;" that since prosecutrix acquired tenure status on November 8th, 1940, when she was teaching in an elementary school, she was entitled to the minimum salary paid for teaching services in such schools, namely, $1,500 per annum; that she was not guilty of laches in asserting her claim for back pay; that she diligently endeavored to effect a settlement with the School Board; that although her petition of appeal was received 5-2/3 months subsequent to the date of his decision (December 29th, 1941) it was only 3½ months after her last day of employment by the School Board; and that she was alert and timely in her protestations and appeals, both to the School Board and to him. *Cf. Board of Education of Garfield* v. *State Board of Education,* 130 *N. J. L.* 388, 393; 33 *Atl. Rep.* (2d) 689.

On appeal to the State Board of Education, that body, on November 14th, 1942, answered the posed question in the negative, and accordingly reversed the Commissioner of Education and dismissed prosecutrix' petition.

We think that the answer given by the State Board of Education is not correct.

The issue to be decided, as we have pointed out, was submitted on a specifically agreed stipulation. The issue under that stipulation was whether the services rendered by prosecutrix as a substitute teacher for the year 1937-1938 plus those which she rendered on November 8th, 1940, could properly be added to the uninterrupted services which she rendered for the school years of 1938-1939 and 1939-1940 in calculating the statutory period for a tenure status. The State Board of Education concededly relied upon argument not included in the "points" filed by respondent, namely, that prosecutrix was not entitled to tenure status because she was not a "teacher" as contemplated "by the school law \* \* \*." Upon argument so made, the State Board of Education concluded that since prosecutrix was neither employed pursuant to respondent's rules or regulations, nor pursuant to a written contract (*R. S.* 18:13–5, 18:13–6 and 18:13–7), nor pursuant to a "majority vote of the whole number of the board" (*R. S.* 18:6–20), *ergo,* prosecutrix was not employed as a "teacher" within the purview of *R. S.* 18:13–16 (as amended).

We think that the State Board of Education was bound to determine the cause on the specifically agreed stipulation as submitted. *Cf. Lastowski* v. *Lawnicki,* 115 *N. J. L.* 230; 179 *Atl. Rep.* 266; *Adams* v. *Atlantic City Electric Co.,* 120 *N. J. L.* 357, 369; 199 *Atl. Rep.* 27. And as so submitted, as already pointed out, the issue was not the validity *vel non* of prosecutrix' appointment as a substitute teacher. But even if it were not so bound, prosecutrix was appointed pursuant to power vested in the superintendent of school by the rules of the School Board (schedule D, article VII, section 7, Substitutes). As a matter of fact counsel for the School Board "does not contend" that the kind of teaching done by prosecutrix' services during the two academic years of 1938-1939 and 1939-1940 is not within the purview of the "Teachers' Tenure Law." And we are not persuaded by his contention that the only issue as to that service is the fact that prosecutrix was not employed "by a majority of the whole members of the Board." *R. S.* 18:6–20. Prosecutrix

was paid by the School Board, whose payrolls had to be certified by its president and secretary. *R. S.* 18:5–55. The School Board was thus charged, under the circumstances, with knowledge of the fact that she was rendering services as a substitute teacher and was paid for such services accordingly. (*Cf. O'Dowd* v. *U. S. Fidelity and Guaranty Co.*, 117 *N. J. L.* 444, 451; 189 *Atl. Rep.* 97.) At all events, it was not open, under the pleadings or the stipulation, to the School Board to argue the validity *vel non* of prosecutrix' employment at that late day. *Cf. McSweeney* v. *Equitable Trust Co.*, 127 *N. J. L.* 299; 22 *Atl. Rep.* (2d) 282; 139 *A. L. R.* 653, appeal dismissed, 315 *U. S.* 785; 86 *L. Ed.* 1191.

Thus we reach the fundamental question posed as requiring decision. What did the legislature mean when it said "The services of *all* teachers * * *?" It is strongly argued for the School Board that the amendment of 1940, *supra,* was enacted promptly following the decision of this court in the case of *Ahrensfield* v. *State Board of Education*, 124 *N. J. L.* 231; 11 *Atl. Rep.* (2d) 414; *affirmed,* 126 *N. J. L.* 543; 19 *Atl. Rep.* (2d) 656, and that it (1940 amendment) had for its specific objective the outlawing of the practice which had been followed, by some of the boards of education in the state, of interrupting the then required continuity of service by the tender and acceptance of the teacher's resignation for a few days and shortly prior to the time when the teacher's tenure status otherwise would have matured.

Be that as it may, and notwithstanding the fact that the construction of *R. S.* 18:13–16 (as amended), is one of first impression, the judicial course of ascertaining the meaning of legislation is clearly charted. We give to words employed in a statute (save when terms of art are employed) their natural and ordinary meaning, significance and import. *Cf. Hackensack Trust Co.* v. *Hackensack*, 116 *N. J. L.* 343, 346; 184 *Atl. Rep.* 408; *Fedi* v. *Ryan*, 118 *N. J. L.* 516, 517; 193 *Atl. Rep.* 801; *Antonelli* v. *Newark*, 128 *N. J. L.* 531, 532; 27 *Atl. Rep.* (2d) 12; *In re Act Concerning Alcoholic Beverages*, 130 *N. J. L.* 123, 128; 31 *Atl. Rep.* (2d) 837. And when, as here, the words employed in the statute are clear and unambiguous, it is rudimentary that there is no

reason or occasion for judicial construction since the words employed are presumed to evince the legislative intent. *Cf. Herod* v. *Mutual Chemical Co.,* 115 *N. J. L.* 369, 372; 180 *Atl. Rep.* 432; *Public Service Co-ordinated Transport* v. *State Board of Tax Appeals,* 115 *N. J. L.* 97, 103; 178 *Atl. Rep.* 550; *Ott* v. *Braddock,* 119 *N. J. L.* 507, 510; 197 *Atl. Rep.* 271.

With these principles in mind, we are not persuaded by the argument that the services of *"all* teachers" do not comprehend the services of a substitute teacher. There is nothing in the statute so to indicate. As a matter of fact the word substitute teacher does not appear in the Tenure Law prior to or after *R. S.* 18 :13–16, as amended. Had the legislature so intended it could have and undoubtedly would have so provided. For when, for examples, it desired that the provisions of its enactment concerning minimum salaries of teachers should not apply "to teachers employed as substitute teachers on a day to day basis," it so provided, *R. S.* 18 :13–13, as amended by *Pamph. L.* 1941, *ch.* 284, *p.* 757, § 1; and again when it desired to exclude a "substitute teacher" from article 3, pension and annuity fund, it so provided in its definition of a teacher as used in the statute. *R. S.* 18 :13–25.

Clearly prosecutrix served the same length of time in her capacity as a substitute teacher as she would have served had she been serving as a regular teacher for the same time. She served, as we have seen, for the period and in the manner prescribed by *R. S.* 18 :13–16, as amended. That is the test and not the nomenclature given to the service. *Cf. Downs et al.* v. *Board of Education of Hoboken,* 13 *N. J. Mis. R.* 853; 181 *Atl. Rep.* 688; *Board of Education of Jersey City* v. *Wall,* 119 *N. J. L.* 308; 196 *Atl. Rep.* 663. The statute gives the School Board ample time within which to determine whether it chooses to continue the services of a teacher before such services satisfy tenure requirements. The adjective "all" modifying the noun "teachers" is comprehensive. And when, as in the case at hand, there is no indication to the contrary, it is all-inclusive; it embraces the services of a substitute teacher. We so hold. To hold to the contrary, as urged, would be an act of legislation and not of construction.

*Cf. Orvil* v. *Woodcliff,* 61 *N. J. L.* 107, 111, *et seq.;* 38 *Atl. Rep.* 685.

We concur in the answer given to the posed question by the Commissioner of Education, and in his resultant disposition of the rights of prosecutrix.

The judgment of the State Board of Education is therefore reversed and the judgment of the Commissioner of Education is affirmed, with costs against the School Board.

Mr. Justice Heher dissents.